UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
JEFF ROTH,

               Plaintiff,

    - against –

FARMINGDALE UNION FREE SCHOOL
DISTRICT.,

              Defendant.
--------------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**
18-CV-4319 (AMD) (ARL)

**ANN M. DONNELLY**, United States District Judge:

On July 30, 2018, the *pro se* plaintiff brought this action against Farmingdale Union Free School District after the District suspended him from entering its property from May 2018 through June 2020.[1] On October 22, 2018, the plaintiff filed an amended complaint, alleging that the District violated his First Amendment and Fourteenth Amendment rights; the plaintiff also brought state law intentional infliction of emotional distress and "right of privacy" claims. (ECF No. 14.) The defendant moved to dismiss the complaint on December 7, 2018. (ECF No. 22.) For the following reasons, the defendant's motion to dismiss is granted.

### BACKGROUND[2]

---

[1] This case was reassigned to me on May 31, 2019.

[2] All facts are taken from the complaint, amended complaint, and attached exhibits. (ECF Nos. 1, 14.) At the motion to dismiss stage, the court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (summary order) (quoting *Taylor v. Vt. Dept. of Educ.*, 313 F.3d 768 (2d Cir. 2002)). Courts ordinarily do not consider prior iterations of a complaint, but because the plaintiff proceeds *pro se*, I interpret both the original and amended complaint together as the operative complaint. *See Little v. City of New York*, No. 13–CV–3813, 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014) ("The plaintiff thus appears to believe that the Amended Complaint supplements, rather than replaces, the Original Complaint. Because the plaintiff is proceeding pro se, the Court will consider the Original Complaint and the Amended Complaint together as the operative pleading."). I do not, however, consider the plaintiff's 50-h testimony, which the defendant attaches to its motion to dismiss, as the plaintiff did not rely on the transcript when drafting the

1

This action stems from a long, tumultuous relationship between the plaintiff and the defendant District. Beginning in 2014, the District Board of Education banned the plaintiff from District property three times: for the period from September 18, 2014 through October 18, 2014, the period from November 7, 2014 through February 7, 2015, and the period from March 12, 2015 through June 30, 2016. (ECF No. 1 at 10.) The defendant claimed that these suspensions were warranted because the plaintiff was behaving in a threatening and intimidating manner at Board of Education meetings and with District administrators and employees—including yelling at officials, threatening to hurt them, and appearing unannounced at an official's home. *See Roth v. Farmingdale Public School District*, No. 14–CV–6668, 2017 WL 395211, *5 (E.D.N.Y. Jan. 30, 2017) ("*Roth I*"). On June 29, 2015, the plaintiff entered school property, and was charged with trespassing; the charge was ultimately dismissed about a year later. (*Id.*; ECF No. 14 at 1.)

On November 10, 2014, the plaintiff sued the District based on the suspensions and its decision not to hire him as an audiovisual technician.[3] *See generally, Roth I*, 2017 WL 395211. The plaintiff brought claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act of 1990, and various state laws; he also alleged violations of the First and Fourteenth Amendments. *See id.* The Honorable Joseph Bianco dismissed most of the plaintiff's claims—the Title VII and ADA

---

complaint. *See Serrata v. Givens*, 2019 WL 1597297, at * 3 (E.D.N.Y. Apr. 15, 2019) (citing *Doe v. City of New York*, 2018 WL 3824133, at *5 (E.D.N.Y. Aug. 9, 2018)) ("[T]he greater weight of authority in this circuit excludes 50-h hearing testimony from consideration on a motion to dismiss unless there is evidence that the plaintiff relied on the 50-h hearing testimony in drafting [his] complaint."); *Prevost v. City of New York*, 2014 WL 6907560, at *2 (S.D.N.Y. Dec. 9, 2014) ("District courts in this circuit regularly decline to consider 50-h transcripts submitted in support of or in opposition to a motion to dismiss, even if neither party objects.").

[3] I take judicial notice of the plaintiff's filings in *Roth I* as the Court may consider matters of public record when deciding a motion to dismiss. *See Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 F. App'x 27, 29 (2d Cir. 2006). However, I consider the documents filed "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

discrimination claims, the ADEA claim, the state slander claim, and Title VII retaliation claim—and granted the plaintiff leave to re-plead those claims.[4] Judge Bianco permitted the First Amendment retaliation and Fourteenth Amendment claims to proceed, finding that the plaintiff had pled enough to establish a *prima facie* case for those claims. *Roth v. Farmingdale Pub. Sch. Dist.*, No. 14–CV–6668, 2016 WL 767986, at *9 (E.D.N.Y. Feb. 26, 2016). The plaintiff then filed an amended complaint, which was ultimately dismissed at summary judgment. Specifically, Judge Bianco dismissed the First Amendment retaliation claim because the plaintiff could not establish that he engaged in constitutionally protected speech. *Roth I*, 2017 WL 395211 at *14. Based on undisputed facts, Judge Bianco found that the District suspended the plaintiff because he made threats to District officials at Board meetings, and that threats were not protected speech warranting constitutional protection. *Id.*

The plaintiff now challenges the District's most recent suspension, which prevents him from entering District property or contacting District officials until June 2020. On May 9, 2018, the District Board of Education sent the plaintiff a letter informing him that he was "prohibited from entering upon any of the District's buildings, or grounds of such buildings," and could not "hav[e] any personal or other contact or communications with members of the Board of Education, District Administrators or employees" until June 30, 2020. (ECF No. 1 at 8.) The suspension did not affect the plaintiff's ability to make "Freedom of Information Law" requests, or "vote in [the] School District and other elections at polling places located on District

---

[4] Judge Bianco held that the plaintiff's First Amendment retaliation allegations—"that he was engaged in advocacy for the community members who disagree with the districts [*sic*] educational technology, security technology, and energy performance contracts plans," that "[a]fter Sandy Hook in December 2012, on behalf of the community [he] became vocal at meetings because of various security aspects which the respondent had become complacent with," and that he was removed from a public concert and Board meeting in May 2013 because he was supporting a different candidate for president of the Board," among other things—were sufficient to survive a motion to dismiss. *Roth I*, 2016 WL 767986, at *9 (internal quotation marks and citations omitted).

3

property." (*Id.*) The District also warned that if the plaintiff "enter[ed] any District property or buildings," he would be treated "as a trespasser," be asked to leave, and law enforcement would be involved. (*Id.* at 9.) Likewise, the District warned that it would contact law enforcement if he made any contact with Board members or District staff. (*Id.*)

That same evening, the plaintiff tried to attend the "Meet the Candidates" event for the Board of Education election. (ECF No. 1 at 5.) The plaintiff was permitted to attend the meeting, despite the suspension, but security officers told him that they would "adhere to the 'suspension'" in the future. (*Id.* at 5.) A Parent-Teacher Association ("PTA") member became upset when the plaintiff started filming the event, and complained to the Board that he had harassed her. (*Id.* at 11.) The plaintiff does not claim that anyone kept him from speaking at the event.

The plaintiff claims he has attended Board meetings since 2000 to "advocat[e] for various technology and security technology improvements with the district." (ECF No. 14 at 1.) According to the plaintiff, "a few members of the Farmingdale Public School's faculty and community . . . personally do not care for [his] educated opinions," which is why he was forbidden to enter District property and to contact Board members. (*Id.*) The plaintiff believes that the District is attempting to censor his opinion and his "right to record." (*Id.*)

Based on these facts, the plaintiff brings the following claims: First Amendment retaliation and a free speech violation, violation of his Fourteenth Amendment rights, state law intentional infliction of emotion distress, and a state "right of privacy" claim. On December 7, 2018, the defendant moved to dismiss the complaint in its entirety. (ECF No. 22.) For the following reasons, the motion to dismiss is granted.

## DISCUSSION

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, pleadings must be construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). A *pro se* complaint should be "construed to raise the strongest arguments it suggests," *Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013), as *pro se* litigants are held to a less stringent standard than lawyers, *Erickson v. Pardus*, 551 U.S. 89, 84 (2007).

The plaintiff raised multiple claims in his original and amended complaints, but withdrew all but his First Amendment claims about his right to free speech. (*See* ECF No. 32 at 7 ("Plaintiff initially pled several causes of action, However on March 28, 2019, . . . informed defense counsel that plaintiff would withdraw all but his First Amendment Claims.").) I, therefore, address only his First Amendment violation of freedom of speech and retaliation claims.

I first consider the plaintiff's claim that the District violated his right to free speech. Construed liberally, the complaints allege that the District restricted the plaintiff's speech at the May 9 "PTA 'Meet the Board candidates' debate" and by banning him from attending Board meetings from May 9, 2018 through June 30, 2020. (ECF No. 14 at 5.) When "faced with a dispute regarding First Amendment activity on government property," a court's first task is to "define the nature of the property at issue." *Zalaski v. City of Bridgeport Police dep't*, 613 F. 3d 336, 341 (2d Cir. 2010). The court must decide whether the forum is a (1) traditional public

5

forum, such as streets and parks, which "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions," *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45 (1983) (quotation marks omitted); (2) a designated public forum, "a place not traditionally open to assembly and debate, . . . which the State has opened for use by the public as a place for expressive activity," *Make the Road by Walking, Inc. v. Turner*, 378 F. 3d 133, 142-43 (2d Cir. 2004) (quotation marks and citations omitted); or (3) a nonpublic forum, which is a forum "neither traditionally open to public expression nor designated for such expression by the State," *Peck ex rel. Peck v. Baldwinsville Cent. Sch. Dist.*, 426 F. 3d 617, 626 (2d Cir. 2005). The limited public forum is a subset of the designated public forum, which includes instances "where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." *Make the Road*, 378 F. 3d at 143 (citations omitted); *see Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Dep't of Parks & Recreation*, 311 F. 3d 534, 545 (2d Cir. 2002).

The parties do not dispute that District Board of Education meetings are limited public fora. (ECF No. 14 at 5; ECF No. 22 at 19.) *See Madden v. Town of Hempstead*, No. 16-CV-6835, 2019 WL 1439935, at *14 (E.D.N.Y. Mar. 29, 2019) ("a public meeting of an elected municipal board . . . is considered to be a limited public forum."); *Smith v. City of Middletown*, No. 09-CV-1431, 2011 WL 3859738, at * 4 (D. Conn. Sept. 1, 2011), *aff'd sub nom. Smith v. Santangelo*, 518 F. App'x 16 (2d Cir. May 1, 2013) (summary order) ("Numerous courts have held that city council meetings which have been opened to the public are limited public fora." (citations omitted)); *Malta v. Slagle*, No. 05-CV-342S, 2007 WL 952045, at * 3 (W.D.N.Y. Mar.

6

29, 2007) ("[C]ourts have generally held that a public meeting of an elected municipal board . . . is a limited public forum for the purposes of First Amendment analysis.").

In a limited public forum, "the government is free to impose a blanket exclusion on certain types of speech, but once it allows expressive activities of a certain genre, it may not selectively deny access for other activities of that genre." *Travis v. Owego-Apalachin Sch. Dist.*, 927 F.2d 688, 692 (2d Cir. 1991). Speech falling within the permitted categories or topics may be limited in the same way as any other public forum: "content-neutral time, place, and manner regulations are permissible if they are narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication, whereas content-based restrictions must be necessary and narrowly tailored to serve a compelling state interest." *Fair v. Esserman*, No. 15–CV–681, 2017 WL 2979685, at *6 (D. Conn. July 12, 2017) (citing *Perry*, 460 U.S. at 45 and *Make the Road*, 378 F.3d at 142).

The plaintiff claims that the District infringed on his right to free speech at the May 9, 2018 "Meet the Candidates" meeting, and that it "was not permitted to regulate speech based on ideology." (ECF No. 14 at 5.) The plaintiff does not, however, claim that he was not allowed to attend or speak at the meeting. In fact, he admits that security officers allowed him to "attend the meeting that night." (ECF No. 1 at 5.) The plaintiff's claim that his freedom of speech was abridged at the "Meet the Candidates" meeting is dismissed.

The plaintiff also claims that the District's suspension violates his freedom of speech because it prevents him from speaking at District Board meetings. According to the plaintiff, the ban was meant to "singl[e] out his viewpoint and education [*sic*] opinion with which they do not agree." (ECF No. 14 at 5.)

The plaintiff in *Nowacki v. Town of New Canaan*, No. 12-CV-1296, 2013 WL 785355

7

(D. Conn. Mar. 1, 2013) faced similar prohibitions, the local police department "prohibited [the plaintiff] from going to New Canaan High School or Saxe Junior High School" or communicating with "anyone in the New Canaan Public Schools." *Id.* at *2. The plaintiff was also informed that the "violation of any of those restrictions would result in his being arrested." *Id.* According to Nowacki, the ban kept him from attending "lacrosse games," an "important public meeting regarding the college process," "various other team banquets and parenting events at the New Canaan public schools," and "meetings of the New Canaan Board of Education;" however, Nowacki was able to attend certain events on school property. *Id.* (internal quotation marks omitted). The district court granted the defendants' motion to dismiss the plaintiff's claims that they had infringed on his freedom of speech, explaining that Nowacki had not pled an actionable claim because he was in fact, able to attend events. *Id.* at *6. Moreover, the court rejected as conclusory the plaintiff's allegation that the suspension was "content-related," or viewpoint discrimination, because other than bald assertions, the plaintiff did "not allege that the . . . defendants engaged in any such content-based exclusions." *Id.*

Like *Nowacki*, the plaintiff does not allege a violation of his freedom of speech. Although the plaintiff claims that the suspension violates his First Amendment rights, he pleads only one instance where he tried to attend a meeting on District property after he was suspended—the May 9 PTA meeting—and admits that he was able to attend, and does not claim that he was not allowed to speak at the event. Further, the plaintiff's claims that the suspension targeted "his viewpoint" and was content-based are conclusory; the plaintiff does not allege any event at which the defendants "engaged in any such content-based exclusions." *Id.* at *6. Accordingly, the plaintiff's freedom of speech claim is dismissed.

I also consider whether the plaintiff has adequately stated a First Amendment retaliation

8

claim. The plaintiff alleges that the District suspended him because they "do not care for [his] educated opinions." (ECF No. 1 at 5.) "In order for a private citizen to state a claim for First Amendment retaliation against a public official, he must plead and prove: (1) he engaged in speech protected by the First Amendment; (2) [the defendant's] actions were motivated or substantially caused by his exercise of that right; and (3) there was a resultant and 'actual chill[ing]' of his exercise of that constitutional right." *Rathbun v. DiLorenzo*, 438 F. App'x 48, 49 (2d Cir. 2011) (summary order) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). The first element "is rarely in dispute, as practically all speech enjoys some First Amendment protection—with rare exceptions for such things as obscenity, fighting words, and yelling 'fire' in a movie theater." *Lynch v. Ackley*, 811 F.3d 569, 578 n.8 (2d Cir. 2016). To satisfy the second element, "[p]laintiffs may not rely on conclusory assertions of retaliatory motive, but must offer instead some tangible proof to demonstrate that their version of what occurred was not imaginary." *Kiernan v. Town of Southampton*, 734 F. App'x 37, 42 (2d Cir. 2018) (summary order) (citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999)). "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Morris*, 196 F.3d at 111 (citation omitted).

The plaintiff does not tie his protected conduct—"advocating for various technology and security technology improvements" beginning in 2000—to the May 2018 suspension. His allegation that the defendant suspended him because it did "not care for [his] educated opinions" is also conclusory, and does not make out a retaliation claim. Moreover, the plaintiff does not specify the opinions with which the District or its Board members disagreed. The plaintiff's

retaliation claim is, therefore, also dismissed.[5] *See Old St. George's LLC v. Bianco*, 389 F. App'x 33, 35 (2d Cir. 2010) (summary order) (affirming the district court's dismissal of a First Amendment retaliation claim where "the complaint does not allege other than in conclusory fashion that these actions were motivated by" the plaintiff's alleged protected speech and was devoid of "other facts, such as a chronology of events, that would lend plausibility to the allegations.").

## CONCLUSION

For the reasons stated above, the defendant's motion to dismiss the plaintiff's First Amendment freedom of speech and retaliation claims is granted, and the remaining claims are withdrawn. A court dismissing a *pro se* complaint should grant leave to amend freely, if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (alterations and quotation marks omitted). Because the plaintiff is representing himself, I give him an opportunity to cure the deficiencies discussed in this Order. In particular, the amended complaint must detail specific instances where the plaintiff tried to speak, but the defendant prevented him from doing so and factual allegations—not conclusory assertions—that the defendant suspended him because of his protected speech beyond what has already been pled in the previous complaints. If the plaintiff does not file an amended complaint within 30 days from the date of this order or if he files an

---

[5] At the motion to dismiss stage, Judge Bianco held in *Roth I* that the plaintiff had adequately pled a retaliation claim, 2016 WL 767986, at *10, but there, the plaintiff alleged significantly more. The plaintiff claimed, among other things, that "[a]fter Sandy Hook in December 2012, on behalf of the community [he] became vocal at meetings because of various security aspects which the respondent had become complacent with" and "that he was removed from a public concert and Board meeting in May 2013 because he was supporting a different candidate for president of the Board." *Id.*

amended complaint that does not cure the deficiencies discussed in this order, this case will be closed.

**SO ORDERED.**

                                                   s/Ann M. Donnelly
                                               _____
                                               Ann M. Donnelly
                                               United States District Judge

Dated: Brooklyn, New York
        July 19, 2019